UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEET METAL EMPLOYERS INDUSTRY
PROMOTION FUND, and SHEET METAL
EMPLOYERS INDUSTRY APPRENTICESHIP
REIMBURSEMENT FUND,

    Plaintiffs,                              Case No. 12-10752
                                                Hon. Lawrence P. Zatkoff

v.

ABSOLUT BALANCING CO. INC.,
ENVIRO-AIRE/TOTAL BALANCE
COMPANY, INC., AERODYNAMICS
INSPECTING CO., AIRFLOW TESTING,
INC., and BARMATIC INSPECTING CO.,

    Defendants,

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 1, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Plaintiffs' Motion for Summary Judgment to Confirm an Arbitration Award [dkt 13]. The motion has been fully briefed by the parties. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Plaintiffs' Motion for Summary Judgment to Confirm an Arbitration Award is DENIED.

## II. BACKGROUND

Plaintiffs are trust funds that bring this action under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(c), to confirm arbitration awards against Defendants for purported breaches of a collective bargaining agreement ("CBA"). The CBA provided to the Court is effective from June 1, 2009, through May 31, 2013, and was entered into between the Sheet Metal and Air Conditioning Contractor National Association–Metropolitan Detroit Chapter ("SMACNA") and Sheet Metal Worker's International Association ("SMWIA") Local Union No. 80 ("Local 80"). SMACNA is the bargaining unit for sheet metal contractors that specialize in heating, ventilating and air conditioning; speciality stainless steel work; and testing and balancing.

Defendants include Absolut Balancing Co. Inc. ("Absolut"), Enviro-Aire/Total Balance Company, Inc. ("Enviro-Aire"), Aerodynamics Inspecting Co. ("Aerodynamics"), Airflow Testing, Inc. ("Airflow"), and Barmatic Inspecting Co. ("Barmatic"). They are testing and air balancing control ("TAB") contractors. Defendants are allegedly not members of Local 80 and are represented by the Associated Air Balance Council ("AABC"). According to Defendants, their only affiliation with SMWIA and Local 80 is based on an agreement between AABC and SMWIA.

Plaintiffs claim that Defendants were bound by the CBA, which required the payment of fringe benefits to Plaintiffs under Sections 15 and 16 of Addendum 1 of the CBA. Section 15 creates the Industry Promotion Fund ("Promotion Fund") and requires the employer of members of the union to contribute to the Promotion Fund for each hour worked by each of the employers' employees.[1] Similar to Section 15, Section 16 creates the Industry Apprenticeship Reimbursement

---

[1] "Employers" and "Employee" appear to be terms defined elsewhere in the CBA. According to the first page of the CBA, "Employer" is defined as SMACNA and "Union" is defined as Local 80. Plaintiffs, however, have provided only the pages of the CBA they find relevant, which does

Fund ("Reimbursement Fund").  Contributions to the fund are based on the hours worked by each of the employers' employees.

Plaintiffs filed grievances against Defendants for failing to make contributions to the two funds since 2006.  Pursuant to Article X, Section 2, of the CBA, the grievances were heard by the Local Joint Adjustment Board ("LJAB") for final and binding arbitration on February 15, 2011. While Defendants received notice of the grievance hearings by letters from the LJAB, Defendants opted to not be present at the hearings.  The LJAB issued the following decisions on February 25, 2011, and March 9, 2011, finding that Defendants violated the CBA by failing to contribute to the Promotion Fund and Reimbursement Fund:

> a decision issued against Defendant Absolut in the amount of $39,447.20—comprising $21,121.48 to the Promotion Fund and $18,355.73 to the Reimbursement Fund;
>
> a decision issued against Defendant Aerodynamics in the amount of $92,564.52—comprising $49,636.32 to the Promotion Fund and $42,928.20 to the Reimbursement Fund;
>
> a decision issued against Defendant Barmatic in the amount of $35,241.56—comprising $18,967.53 to the Promotion Fund and $16,274.03 to the Reimbursement Fund;
>
> a decision issued against Defendant Airflow in the amount of $74,130.94—comprising $39,698.97 to the Promotion Fund and $34,431.98 to the Reimbursement Fund; and
>
> a decision issued against Defendant Enviro-Aire in the amount of $189,823.54—comprising $102,278.85 to the Promotion Fund and $87,544.69 to the Reimbursement Fund.[2]

---

not appear to include any pages defining the terms "Employers" or "Employees" as used in the CBA.

[2] The LJAB provided no analysis in its decisions (solely noting that after a closed session, they had a "full and thorough discussion"), only listed the evidence submitted, explained the basic

Defendants have neither complied with the decisions nor moved to vacate the decisions. After Plaintiff filed separate cases against each Defendant in this Court, the cases were consolidated based on similarity of the parties, facts and controlling law. On May 25, 2012, Plaintiffs filed the instant motion for summary judgment. Plaintiffs argue that the Court should summarily enter judgment in their favor because Defendants are precluded from asserting any defenses based on the three-month limitations period for challenging arbitration awards under § 301 of the LMRA. Defendants claim they are not foreclosed from defending against this action because the CBA is not applicable to them. According to Defendants, the CBA is between SMACNA and Local 80, not Defendants.

### III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

The moving party bears the initial burden of demonstrating the absence of any genuine

---

procedural background, and stated its final award against Defendants.

dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).[3]

## IV. ANALYSIS

The Sixth Circuit applies a three-month limitations period to a § 301 claim brought to *vacate* an arbitrator's award in a Michigan district court. *Occidental Chem. Corp. v. Int'l Chem. Workers Union*, 853 F.2d 1310, 1314–15 (6th Cir. 1988); *accord Bacashihua v. U.S.P.S.*, 859 F.2d 402, 406 (6th Cir. 1988). The Sixth Circuit explained that since the employer failed to timely file an action to vacate the award, the employer could not later challenge the award during a subsequent action brought by the union to enforce the award on any similar grounds that could have been raised in a timely action to vacate. *Occidental*, 853 F.3d at 1317; *Prof'l Adm'rs Ltd. v. Kopper-Glo Fuel, Inc.*,

---

[3] While neither party has made a jury demand in this case, the Court still finds the language used in *Anderson* applicable when determining whether Plaintiffs are entitled to summary judgment.

819 F.2d 639, 642–43 (6th Cir. 1987).  The Sixth Circuit reasoned that barring defenses was consistent with the quick resolution of arbitrated disputes and resulted in an action to confirm an arbitration award being a summary proceeding.  *Occidental*, 853 F.3d at 1317.  "Arbitration is meant to be a quick and final resolution by which parties are bound.  Moreover, an action to confirm the award should be a summary proceeding, not a proceeding in which the defendant seeks affirmative relief."  *Kopper-Glo Fuel, Inc.*, 819 F.2d at 642.

Guided by *Occidental* and *Kopper-Glo Fuel, Inc.*, Defendants' ability to challenge the LJAB decisions is procedurally and substantively foreclosed.  *See id.*

While Defendants are foreclosed from attacking the LJAB decisions, the Court's review of the LJAB decisions does not end here.  Even though Defendants failed to timely move to vacate the award, the Court must determine if enforcing the CBA is contrary to public policy.  *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber Workers*, 461 U.S. 757, 766 (1983).  The public policy at issue must be "an explicit, well defined and dominant public policy" that "specifically militates against the relief ordered by the arbitrator.'"  *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 63 (2000).  The Court determines this policy "'by reference to the laws and legal precedents and not from general considerations of supposed public interests."  *W.R. Grace & Co.,* 461 U.S. at 766 *(*quoting *Muschany v. United States*, 324 U.S. 49, 66 (1945)); *see also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29 at 43 (1987).

In sum, the issue left before the Court is whether enforcement of the LJAB decisions is against public policy.  *See Occidental*, 853 F.3d at 1371.  Defendants raise two reasons as to why the decisions are against public policy:

(1) Companies should not be forced to pay into the Promotion Fund because it is "not wages, hours and benefits for the purpose of the employer, employee relationship";

and

(2) the Court has no subject matter jurisdiction over non-signatories to the CBA. Defendant directs the Court to *Comm. of Plumbing and Pipefitting Ind.–Det. v. Wash. Grp. Inter'l, Inc.*, 568 F.3d 626 (6th Cir. 2009), and *Metro. Det. Bricklayers Dist. Council v. MJE Hoetger & Co.*, 672 F.2d 580, 583 (6th Cir. 1982).

Defendants' first argument is unconvincing. Forcing Defendants to contribute to a fund that promotes the whole union, as opposed to a fringe benefit for a specific employer, is not determined to be against "an explicit, well defined and dominant" public policy. The LJAB determined that the failure to contribute to the Promotion Fund and the Reimbursement Fund was a failure to pay fringe benefits, and Defendants therefore were ordered to make such contributions. None of the legal authority cited by Defendants—including *Washington Group* and *MJE Hoetger—*"specifically militates against" either contributing to the Promotion Fund as a fringe benefit or labeling the Promotion Fund as a fringe benefit. Rather, Defendants are relying on their own "general considerations of supposed public interests."

Defendants' second argument, while inarticulately pled, has merit. After review of the applicable laws and legal precedents, the Court finds that enforcing an arbitration award, based on violations of a collective bargaining agreement, against employers who allegedly are not parties to the collective bargaining agreement is against "explicit, well defined and dominant" public policy. A rudimentary principle of arbitration is that it is a creature of contract. *Stolt-Nielson v. Animalfeeds Int'l Corp.*, __ U.S. __ ; 130 S.Ct. 1758, 1773 (2010) (citing *Volt Inf. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). Arbitration is "a matter of consent, not coercion[,]" and the parties must agree to it. *Id.* This is a foundational principle which limits the

power of arbitration to only those that consent. *Volt*, 489 U.S. at 479; *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648–49 (1986) ("[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration").

It is well defined in the Sixth Circuit that an arbitrator exceeds his or her authority by making an award against persons who were not parties to the arbitration proceedings. *NCR Corp. v. Sac-Co., Inc.*, 43 F.3d 1076, 1080 (6th Cir. 1995); *Orion Shipping & Trading Co. v. E. States Petroleum Corp. of Pan., S.A.*, 312 F.2d 299, 300 (2d Cir. 1963), cert. den. 373 U.S. 949 (1963). "An arbitration panel may not determine the rights or obligations of non-parties to the arbitration." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003). "'[A] decision whether parties other than those formally signatories to an arbitration clause may have their rights and obligations determined by an arbitrator . . . is not within the province of the arbitrator himself but only the court.'" *NCR Corp.*, 43 F.3d at 1080 (quoting *Orion Shipping & Trading Co.*, 312 F.2d at 301); *see also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964); *Teamsters Local Union No. 783 v. Anheuser-Busch, Inc.*, 626 F.3d 256, 261 (6th Cir. 2010); *Promotora de Navegacion, S.A. v. Sea Containers, Ltd.*, 131 F. Supp. 2d 412, 416 (S.D. N.Y. 2000) ("Commercial arbitration is a creature of contract, and a person cannot be required to submit to arbitration any dispute which he has not agreed to so submit.") (citations omitted).

Explicit, well defined public policy dictates against holding Defendants liable under the LBAJ decisions for violations of the CBA, *so long as* Defendants are not signatories to the CBA and its arbitration provisions. Turning to the evidence presented by the parties, the Court finds that a genuine dispute of fact as to whether Defendants have agreed to the CBA, which contains the provisions creating the Promotion Fund, the Reimbursement Fund, and the authority of the LJAB

to arbitrate disputes arising from the CBA. *See Washington Group*, 568 F.3d at 628 (noting that because the company did not sign the local collective bargaining agreements, the company cannot be required to make payments to the industry promotion funds.)

Plaintiffs have provided several documents signed by Defendants that purportedly establish that they are in fact signatories of the CBA. The Court's review of these documents, however, establishes that a jury could reasonably find that Defendants are not signatories of the CBA.

The first type of document submitted to the Court is a document identified as an addendum ("the Addendum"). The typed language provided in the Addendums states, "This Addendum . . . shall remain in full force and effect for the duration of the basic agreement." The Addendums further provide, "We, the undersigned, have read . . . the terms and conditions of the foregoing Labor Agreement and hereby agree to be bound thereto." Each Addendum signed by Defendants contains the same typed language. Significantly, the Court was not provided the related basic agreement or "foregoing Labor Agreement" referred to in the Addendums. To the extent the Court has received these agreements, Plaintiffs have failed to show sufficiently which agreements are related to the Addendums by producing only the signatory pages of the Addendums. Plaintiffs have provided the Court no context as to what basic agreements or Labor Agreements relate to the Addendums.

Moreover, assuming the signing of the Addendum establishes that Defendants are bound to the CBA, Defendants Aerodynamics, Airflow, and Barmatic have included handwritten language on their respective Addendums. Defendant Aerodynamics' Addendum includes handwritten language noting that "Airbalance International [agreement] is our governing work rule[,]" and "This Agreement is . . . with the clerk [sic] understanding that the Balancing International [agreement] is

9

a full governing part."[4] Istvan Frohling signed the Addendum on behalf of Defendant Airflow on September 23, 1997, which includes the handwritten notation "[w]e agree to wages + benefit clauses only per AABC [not readable] internat[ional] Agreement." Plaintiffs provide two other Addendums previously signed in May 1992 and March 1994. Both contain similar handwritten notations as appears on the September 23, 1997, addendum.[5] Viliam Barci signed the Addendum on behalf of Defendant Barmatic on March 31, 1992, with the handwritten notation that "We agree to wages & benefit clause only." [6] A reasonable jury could conclude that the handwritten language restricts Defendants Aerodynamics, Airflow, and Barmatic from having agreed to the arbitration provision.

Plaintiffs also submitted documents for several Defendants that are letters of assent and agreements to contribute weekly fringe benefits. Defendant Absolut is a party to a letter of assent with Local 80, which states:

> This is to certify that the undersigned firm has examined and does agree to comply with the terms and conditions of the employment contained in the Collective Bargaining Agreement by and between [Local 80] and [SMACNA], which continues in effect through May 31, 1999. It is further agreed that the signing of this Letter of Assent

---

[4]The LJAB notes in its decision that it received proof that the CBA applied to Defendant Aerodynamics based on a contract signed by Laszlo Lukas on March 20, 2000, and a contract for the period beginning June 1, 1976. The Court has not been provided the full pages of the March 20, 2000, contract and does not have a single page from the June 1, 1976, contract.

[5]The LJAB indicates in its decision that it also reviewed a Letter of Assent dated May 28, 1992, that purportedly binds Defendant Air Flow to the CBA. Plaintiff has not provided this Letter of Assent to the Court with its motion for summary judgment.

[6]As to Defendant Enviro-Aire, the LJAB decision notes that it was provided with the following evidence as proof that Defendant Enviro-Aire was bound to the CBA: "Contracts signed by *David Pauwels*, President, dated December 22, 1988 and March 9, 1994 along with an Agreement for Weekly Contributions of Fringe Benefits dated February 12, 1988." Notably, the Court has been provided with Addendums signed on March 9, 1994, and December 22, 1988, and an Agreement for Weekly Contributions of Fringe Benefits—all signed by *Paul Giles* on behalf of Defendant Enviro-Aire. Neither party explains this discrepancy.

>    shall be as binding on the undersigned firm as though it has signed
>    the above referred to Agreement and any amendments thereto.

Defendants Absolut and Enviro-Aire signed agreements to make weekly contributions of "fringe benefits" according to an agreement between SMACNA and Local 80. The agreement referred to between SMACNA and Local 80 is the CBA. The agreement signed by Defendants, however, does not expressly bind them to the arbitration provisions in the CBA. Rather, the agreement binds Defendants Absolut and Enviro-Aire *only* to make weekly fringe benefits in the amounts determined in the CBA.

Further evidence submitted by Defendants supports the conclusion that documents signed by Defendants did not bind them to the CBA, and thus the arbitration provisions contained therein. SMACNA's website as of April 3, 2012, explained that there were two types of memberships with SMACNA. The first type, active members, are defined as members "who are contributors to the Sheet Metal Industry Promotion Fund." Associate members, to the contrary, are defined as those "who are not contributors to the Sheet Metal Industry Promotion Fund." In October of 2010, Defendant Barmatic and Defendant Enviro-Aire are listed as associate members on SMACNA's website.[7] It then follows that Defendant Barmatic and Defendant Enviro-Aire are not required to pay into the Promotion Fund because they are associate members. According to the CBA, the Promotion Fund and the Reimbursement Fund are to be paid by "Employers." Thus, "Employers", as the term is used in the CBA, may not include Defendants. A jury could reasonably find that

---

[7]As of July 25, 2012, Defendants Absolut, Aerodynamcs, Air Flow, Barmatic, and Enviro-Aire are now listed on SMACNA's website as "Testing & Balancing Contractors" and not associate members. Plaintiffs provide no explanation as to why the specific Defendants in this case have been recently reclassified as active members.

Defendants, not being "Employers", are not bound by the grievance procedures since the CBA only binds the "Employer" and the "Union" to grievances "arising out of interpretation or enforcement of this Agreement."

Additionally, a computer record regarding benefits data for Defendant Enviro-Aire also shows that Defendants may not be bound by the CBA. Two comments, dated September 4, 2002, and April 8, 2003, stored in the computer record state that Defendant Enviro-Aire is not a member of SMACNA and does not pay into the Promotion Fund and Reimbursement Fund. A check issued from Plaintiff Promotion Fund to Defendant Barmatic in May 2007 also establishes that Defendant Barmatic was reimbursed $1,181.13 for erroneously paying into the fund. Approximately three years pass, and Plaintiffs are now asserting that Defendants are required to submit payments to the Promotion Funds, including the past six years. Plaintiffs provide no explanation for this change in position. As such, for the reasons stated above, the Court finds that a genuine dispute of fact exists as to whether Defendants are bound by the CBA and the arbitration provisions contained therein.

Accordingly, it is against well defined public policy to apply the CBA against any party that is not a signatory to it. Based on the genuine dispute of fact as to whether Defendants are bound by the CBA and the arbitration provisions contained therein, Plaintiffs' motion for summary judgment is DENIED.

## V. CONCLUSION

Accordingly, for the above reasons, IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment to Confirm an Arbitration Award [dkt 13] is DENIED.

IT IS SO ORDERED.

        S/Lawrence P. Zatkoff
        LAWRENCE P. ZATKOFF
        UNITED STATES DISTRICT JUDGE

Dated: August 1, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 1, 2012.

        S/Marie E. Verlinde
        Case Manager
        (810) 984-3290