UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEET METAL EMPLOYERS INDUSTRY
PROMOTION FUND and SHEET METAL
EMPLOYERS INDUSTRY APPRENTICESHIP
REIMBURSEMENT FUND,

          CONSOLIDATED MATTER
   Plaintiffs/Counter-Defendants,          Case No. 2:12-10752
          Hon. Lawrence P. Zatkoff

-vs-

ABSOLUT BALANCING CO., INC.,
ENVIRO-AIRE/TOTAL BALANCE COMPANY,
AERODYNAMICS INSPECTING CO.,
AIRFLOW TESTING, INC., and
BARMATIC INSPECTING CO.,

   Defendants/Counter-Plaintiffs/
   Third-Party Plaintiffs,

-and-

-vs-

SMACNA, A Michigan corporation,
STEFANSKY, HOLLOWAY & NICHOLS, INC.,
a Michigan corporation, BENESYS, INC.,
a Michigan corporation, SHEET METAL WORKERS
INTERNATIONAL LOCAL 80,

   Third-Party Defendants.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on July 30, 2014

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is currently before the Court on Defendants' Motion for Summary Judgment

[dkt. 106], Plaintiffs' Motion for Summary Judgment to Confirm Arbitration Award [dkt. 108],

and Plaintiffs' Motion to Strike Witness from Defendants' Witness List [dkt. 109]. All of the motions are fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Defendants' Motion for Summary Judgment, Plaintiffs' Motion for Summary Judgment to Confirm Arbitration Award, and Plaintiffs' Motion to Strike Witness from Defendants' Witness List are DENIED.

## II. BACKGROUND

Plaintiffs Sheet Metal Employer Industry Promotion Fund ("Promotion Fund") and Sheet Metal Employers Industry Apprenticeship Reimbursement Fund ("Reimbursement Fund")[1] seek confirmation of arbitration awards issued against five corporate Defendants: Absolut Balancing Co., Inc. ("Absolut"), Enviro-Aire/Total Balance Company, Inc. ("Enviro-Aire"), Aerodynamics Inspecting Co. ("Aerodynamics"), Airflow Testing, Inc. ("Airflow"), and Barmatic Inspecting Co. ("Barmatic").[2] Plaintiffs are trust funds that bring this action under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(c).

The arbitration awards at the heart of the matter were awarded in 2011 by the Local Joint Adjustment Board ("LJAB") after Plaintiffs filed grievances against Defendants. Plaintiffs' grievances allege that, since 2006, Defendants failed to make contributions to the Promotion Fund and the Reimbursement Fund. Plaintiffs argue Defendants are bound by a collective bargaining agreement (the "CBA") to make these contributions. This CBA was originally drafted and entered into by the Sheet Metal and Air Conditioning Contractor National

---

[1] The Promotion Fund and Reimbursement Fund are at times collectively referred to as "Plaintiffs."
[2] These five corporations are at times collectively referred to as "Defendants."

Association-Metropolitan Detroit Chapter ("SMACNA") and Sheet Metal Worker's International Association Local Union No. 80 ("Local 80"). Plaintiffs allege all Defendants individually agreed, via signed consent, to be bound by the terms of the CBA as signatory employers.

Defendants assert they are not bound to the CBA, arguing they never signed the CBA, and, if they did, their consent was qualified and limited and did not include assenting to the grievance procedures invoked by Plaintiffs. Additionally, Defendants contend they are testing and air balancing control ("TAB") contractors that are bound only by a local agreement between the Sheet Metal Worker's International Association and the Associated Air Balance Council ("AABC").

On February 25, 2011, and March 9, 2011, the LJAB issued decisions finding Defendants violated the CBA by failing to contribute to the Promotion Fund and the Reimbursement Fund. In so finding, the LJAB made each of the following conclusions:

- Defendant Absolut failed to contribute $39,447.20—comprising $21,121.48 to the Promotion Fund and $18,355.73 to the Reimbursement Fund;
- Defendant Aerodynamics failed to contribute $92,564.52—comprising $49,636.32 to the Promotion Fund and $42,928.20 to the Reimbursement Fund;
- Defendant Barmatic failed to contribute $35,241.56—comprising $18,967.53 to the Promotion Fund and $16,274.03 to the Reimbursement Fund;
- Defendant Airflow failed to contribute $74,130.94—comprising $39,698.97 to the Promotion Fund and $34,431.98 to the Reimbursement Fund; and
- Defendant Enviro-Aire failed to contribute $189,823.54—comprising $102,278.85 to the Promotion Fund and $87,544.69 to the Reimbursement Fund

None of the Defendants participated in any of the LJAB proceedings. Instead, counsel for Defendants sent the LJAB and Plaintiffs' counsel a letter, indicating that Defendants "are not members nor signators to any SMACNA agreement," and that the grievance procedure contained in the CBA was "not applicable to this matter." The letter indicated that, due to this view, the Defendants would not attend any of the grievance proceedings. Likewise, the Defendants have

never complied with the LJAB decisions, appealed the decisions, or moved to have any of the decisions vacated.

On May 25, 2012, Plaintiffs originally moved this Court to confirm the LJAB awards. Defendants objected on various grounds. The Court held that Sixth Circuit precedent[3] indicated Defendants' ability to challenge the LJAB decisions was procedurally and substantively foreclosed. The Court nevertheless denied Plaintiffs' motion to confirm the JLAB awards, finding that judicial enforcement of the CBA against Defendants may be contrary to "public policy." Specifically, the Court held "that enforcing an arbitration award, based on violations of a collective bargaining agreement, against employers who allegedly are not parties to the collective bargaining agreement is against 'explicit, well defined and dominant' public policy." *See* Dkt. # 34, p. 7. With the evidence before it in 2012, the Court decided that "a genuine dispute of fact [exists] as to whether Defendants have agreed to the CBA, which contains the provisions creating the Promotion Fund, the Reimbursement Fund, and the authority of the LJAB to arbitrate disputes arising from the CBA." *Id.*, p. 8–9.

After denying Plaintiffs' initial request to confirm the LJAB awards, the Court allowed the parties to supplement the record on a very limited point of contention: whether Defendants were signatories to the CBA and its arbitration provisions. *See* Dkt. 41, p. 2. Indeed, the Court explicitly stated confirmation of the LJAB awards hinged on the "sole issue" of whether Defendants are signatories to the CBA. *Id.* The Court has subsequently denied Plaintiffs' Motion for Reconsideration [dkt. 46], dismissed Defendants' counter-complaint [dkt. 65], and dismissed Defendants' amended third-party complaint [dkt. 118]. All of these opinions make

---

[3] *See Occidental Chem. Corp. v. Int'l Chem. Workers Union*, 853 F.2d 1310 (6th Cir. 1988); *Prof'l Adm'rs Ltd. V. Kopper-Glo Fuel, Inc.*, 819 F.2d 639 (6th Cir. 1987).

4

abundantly clear that "the only issue that requires resolution in this case is whether or not Defendants are signatories to the CBA and its arbitration provisions." Dkt. # 65, p. 5.

### III. LEGAL STANDARD

#### FED. R. CIV. P. 56

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact, with all inferences made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).

Once the moving party has met its burden of production, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

A. PLAINTIFFS' AND DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants contend no genuine issue of material fact exists that they are not subject to the CBA and the grievance procedures contained therein. As such, they assert this Court cannot confirm the LJAB awards. Plaintiffs argue that there is no genuine issue of material fact that the arbitration awards issued by the LJAB should be confirmed and that judgments against each of the Defendants should be entered. As is established below, the Court finds that a genuine issue of material fact remains as to whether Defendants are bound to the CBA and its arbitration provisions contained therein.

9 U.S.C. § 9 ("Section 9") governs the confirmation of arbitration awards by federal district courts. Section 9 states in part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected[.]

As established by the United States Supreme Court, "[t]here is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies." *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587 (2008). This makes the power of the federal district court to review or vacate an arbitration award very limited in nature. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 36 (1987) ("courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.").

This idea, however, is premised on the notion that all parties involved in a suit consented to have their disputes resolved through arbitration. As this Court – and the Supreme Court – previously established, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit . . . arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). The Supreme Court has further clarified that, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id*.; *see also Oxford Health Plans LLC v. Sutter*, 133 S.Ct. 2064, 2068 n.2 (2013) (finding that "gateway matters" such as "whether parties have a valid arbitration agreement at all" or whether an arbitration clause applies are "presumptively for courts to decide.") "A court may therefore review an arbitrator's determination of [arbitrability] *de novo* absent 'clear[ ] and unmistakabl[e]' evidence that the parties wanted an arbitrator to resolve the dispute." *Sutter*, 133 S.Ct. at 2068 (internal citations omitted).

The Court finds that both Plaintiffs and Defendants were given ample time to supplement the record to assist this Court in determining whether Defendants were signatories to the CBA and its arbitration provisions. After conducting months of discovery, Plaintiffs and Defendants filed motions for summary judgment, purportedly with evidence that no genuine issue of material fact exists. The Court does not agree.

The Court has already established that "arbitration is matter of contract." Both parties agree with this basic principle: Plaintiffs maintain the LJAB awards must be confirmed because all five Defendants "are bound to the CBA" between SMACNA and Local 80. This argument is based on the premise that all five Defendants allegedly signed an agreement – a contract –

7

consenting to be bound by the terms of the CBA. Defendants also agree that the issue currently before the Court is a matter of contract, insisting that "there exists no genuine issue of material fact [that] there is no contract between the Plaintiffs and Defendants for purposes of the grievance procedure."

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.,* 315 F.3d 619, 624 (6th Cir. 2003). Further, "[b]ecause arbitration agreements are fundamentally contracts, [the Court must] review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416 (6th Cir. 2011).[4] Indeed, the arguments presented by Plaintiffs and Defendants hinge on varying interpretations of contract formation. Yet neither Plaintiffs nor Defendants cite to a single Michigan statute or case regarding the enforcement of contracts under Michigan law. In presenting their arguments concerning signature pages, grievance procedures, and modifications of various portions of the CBA, no party found it necessary to supplement any of their arguments with any applicable Michigan law. As such, the parties have left it to the Court to speculate as to whether their arguments are supported by the "applicable state law of contract formation." The Court refuses to engage in such speculation.

---

[4] The Supreme Court has held that Congress intended federal law, fashioned by federal courts, to be applied to certain claims brought pursuant to §301 of the LMRA. *See Textile Workers Union of Am. V. Lincoln Mills of Ala.*, 353 U.S. 448, 456 (1957). Section 301 only governs those claims, however, founded "directly on rights created by collective bargaining agreements" and claims substantially dependent on the analysis of a collective bargaining agreement. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987). The current issue – whether Defendants are signatories to the CBA and its arbitration provision – is neither subject to rights created by the CBA nor "substantially dependent" on interpretation of the CBA, and thus federal law does not apply.

The Court thus finds that Plaintiffs and Defendants have each failed to prove that the genuine issue of material fact the Court illuminated in 2012 – whether or not Defendants are signatories to the CBA and its arbitration provisions – does not exist. As such, the Court denies each parties' motion for summary judgment.

### B. MOTION TO STRIKE

Also pending is Plaintiffs' motion to strike witness Ken Sufka from Defendants' witness list. Plaintiffs assert that Defendants did not file a witness list containing Mr. Sufka's name until after the discovery cut-off date in this matter. As a result, Plaintiffs argue they have been prejudiced, as they have had no time to conduct any discovery in regards to Mr. Sufka, including taking his deposition. Plaintiffs further argue that, pursuant to the Federal Rules of Civil Procedure, Defendants' violation of the Court's scheduling order warrants sanctions.

While Defendants admit that the first witness list with Mr. Sufka's name on it was submitted after the discovery cut-off date, Defendants assert Plaintiffs have been aware of Mr. Sufka throughout the litigation process. Further, Defendants contend Plaintiffs' attorney Anthony Asher spoke with Mr. Sufka at length. As such, Defendants assert Plaintiffs have not been prejudiced in any manner, that Mr. Sufka should not be stricken, and that sanctions are not warranted.

The Court finds most relevant to this motion Plaintiffs' contention that they have been left with "zero time to conduct discovery as to the capacity in which Ken Sufka would be called as a witness and his expected testimony." Nowhere do Plaintiffs make a substantive argument illuminating why Mr. Sufka should be stricken from Defendants' witness list; indeed, Plaintiffs sole concern seems to be their inability to conduct discovery with regards to Mr. Sufka.

This Court is free to reopen discovery for any purpose. *See Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir.) ("It is well established, however, that the scope of discovery is within the sound discretion of the trial court."). As such, the Court will allow Plaintiffs to conduct limited discovery "as to the capacity in which Ken Sufka would be called as a witness and his expected testimony."

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment [dkt. 106] and Plaintiffs' Motion for Summary Judgment to Confirm Arbitration Award [dkt. 108] are DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion to Strike Witness from Defendants' Witness List [dkt. 109] is DENIED.

IT IS FURTHER ORDERED that discovery is re-opened for the sole purpose of allowing Plaintiffs to conduct limited discovery as to the capacity in which Ken Sufka would be called as a witness and his expected testimony.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
HON. LAWRENCE P. ZATKOFF
Date:   July 30, 2014                                     U.S. DISTRICT JUDGE